FILED

2005 Feb-01  PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **JOYCE SHARPLEY, Wife of Decedent as Administratrix of the Estate of Decedent, JAMES EDWARD SHARPLEY,** ) ) ) ) | |
| **Plaintiff,** ) | |
| **vs.** ) | **CV-02-JHH-0235-NE** |
| **JOHN RALEY, individually; TIM COSBY, individually; and JOHNNY JOHNSON, individually,** ) ) | |
| **Defendants.** ) ) | |

## MEMORANDUM OF DECISION AND ORDER

The court has before it plaintiff's September 14, 2004 motion for summary

judgment as to the liability of defendant Raley.  Under the September 15, 2004

order, the motion came under submission October 13, 2004.  The court also has

Raley's October 13, 2004 motion for summary judgment.  Under the October 19,

2004 order, this motion came under submission on November 12, 2004.  The

court, having considered the briefs and submissions of the parties, and seeking

clarification in chambers, concludes that a genuine issue of material fact precludes

the court from granting either plaintiff's motion or Raley's cross-motion for

summary judgment.

## I. PROCEDURAL HISTORY

Plaintiff Joyce Sharpley, the surviving spouse and administratrix of the estate of Edward Sharpley ("Sharpley"), commenced this action on January 30, 2002 seeking damages relating to Sharpley's death, which was caused by defendant John Raley ("Raley"). The claims remaining in this lawsuit are only those against Raley in his individual capacity.[1] Raley filed his answer on November 13, 2002.

Both parties have filed briefs and submitted evidence in support of their respective positions. Plaintiff submitted evidence[2] in support of her motion for summary judgment and filed a supporting brief on September 14, 2004. Raley submitted evidence[3] in support of his motion for summary judgment on October 5,

---

[1] See orders entered October 21, 2002, November 19, 2002 and this date.

[2] Plaintiff submitted: grand jury testimony of John Raley from State v. Raley, CC-01-1018 (Limestone Circuit Court) (herinafter "state criminal trial"); reading of grand jury's indictment of John Raley from state criminal trial; testimony of John Raley from state criminal trial; testimony of Tim Cosby from state criminal trial; deposition of John Raley; order affirming conviction - Raley v. State, Ms. 020983 (Ala. Crim. App. 2003) (unpublished); certificate of judgment, denial of writ of certiorari - Ex parte Raley, Ms. 1030018 (Ala. 2003) (unpublished); oral jury charge from state criminal trial; jury verdict from state criminal trial; sentencing from state criminal trial.

[3] Defendant Raley submitted: state criminal trial testimony excerpts of Brian Paul Wager, Timothy Cadman, Oscar Rodgers, John Raley, Larry Gray, William Bryant, Tim Cosby, Johnny Johnson; excerpts of deposition of Ronald Kiker; affidavit of Ed White with attached exhibit; Raley's First Amended Answer; witness statement of William Bryant; witness statements; Procedural General Order Number 3 of the Division of Game and Fishery; opinion of Ronald Kiker with attachment; documents produced by Decatur Police Department; documents produced by Morgan County Sheriff's Department; documents produced by Hartselle Police Department;

2

2004 and filed a supporting brief on October 13, 2004. Raley supplemented his

evidence on October 13, 2004[4] and October 21, 2004.[5] Plaintiff again submitted

evidence[6] on November 4, 2004 and filed a response brief to Raley's motion and

Cosby's motion on November 12, 2004. Plaintiff also submitted a box of exhibits[7]

to the court on November 18, 2004.

## II. Standards for Evaluating a Summary Judgment Motion

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings,

---

educational materials for game wardens; and "all evidence submitted by the plaintiff."

[4] Defendant Raley submitted: deposition excerpts from Ronald Kiker.

[5] Defendant Raley submitted: deposition excerpts from Timothy Cadman and deposition excerpts of Brian Wagar.

[6] Plaintiff submitted: deposition of Tim Cosby with attached exhibits; deposition of Johnny Johnson with attached exhibits; deposition of Ronald Kiker with attached exhibits; deposition of Brian Wagar; deposition of Timothy Cadman; and affidavit of George Grissom.

[7] Plaintiff submitted: letter from James Jackson to Sheriff McDowell; plaintiff's re-notice of deposition to John Raley; personnel file of John Raley; Supervisor's Orientation Check Sheet for John Raley; procedural general orders and policies of the Alabama Game and Fish Division; Alabama Game and Fish Division documents; state criminal trial testimony of John Raley; grand jury testimony of John Raley; plaintiff's supplemental interrogatories and request for production of documents to John Raley with responses; John Raley's prescription list; John Raley's medical records; vita of Ronald Kiker; materials reviewed by Ronald Kiker; state criminal trial testimony of Delanie Cottingham and Tim Cadman; statement of William Bryant; article by Thomas Petroski; information taken from deposition of Tim Cosby; plaintiff's re-notice of deposition of Tim Cosby; employee performance appraisal forms; John Raley's phone records; plaintiff's supplemental interrogatory and request for production of documents to Cosby and Johnson with responses; Johhny Johnson's employee performance appraisal; plaintiff's first interrogatories to Johnny Johnson with answers; state criminal trial testimony of Cosby; Cosby's answers to plaintiff's first interrogatories; appellate transcript; exhibits from state criminal trial; Alabama certificate of death; photographs of the accident scene; and exhibits attached to previously filed motions.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Chapman, 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d

4

at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed

verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. See Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## III. Relevant Undisputed Facts[8]

During the afternoon of July 6, 2001, Alabama state conservation officer

(also referred to as "game warden") John Raley ordered a car driven by James

Edward Sharpley to pull over pursuant to a traffic stop.[9] (See Raley Depo at 165-

66.) After Raley and Sharpley's vehicles stopped, Sharpley exited his vehicle onto

the shoulder of interstate I-565. (See id. at 168.) Within a matter of seconds,

Sharpley got back into his car and told his passenger, Brian Wagar, "it's not a ...

cop."[10] (See Wagar Trial Testimony at 61) (expletive omitted).

---

[8] If the facts are in dispute, they are stated in the manner most favorable to the non-moving party. See Fitzpatrick, 2 F.3d at 1115. In the case sub judice there are cross-motions for summary judgment, nevertheless, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S., 224 F.2d 338, 345 (Former 5th Cir. 1955); Matter of Lanting, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard. See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." See WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998).

Testimony taken from the certified state criminal trial transcript is properly before the court on summary judgment and has been included in the voluminous evidentiary submissions of each party without objection. The court takes judicial notice of the prior proceedings against Raley in the state court system. The court additionally notes that the prior testimony is presented to this court in the form of the "Reporter's Official Transcript on Appeal." This transcript was certified by the Official Court Reporter on February 14, 2003.

[9] Traffic stops are not an official duty of a conservation enforcement officer although it is within their official authority. (See Johnson Depo. at 37.)

[10] Wagar and Sharpley were carpooling home from a job site. (See Wagar Trial Testimony at 61.)

Sharpley drove to a nearby RaceTrac gas station, still being pursued by Raley who had engaged the siren and blue lights on his marked game warden truck. (See Raley Depo. at 171.) Sharpley parked his car at a gas pump and exited his vehicle. (See id. at 173.) Sharpley met Raley near the game warden truck. (See id. at 174.) Sharpley was summoned to come towards Raley's truck and he did so with his hands in the air as if he did not understand something. (See Cadman Depo. at 18.) Raley touched Sharpley on the shoulder and twice ordered Sharpley to put his hands on the truck's hood. (See Raley Depo. at 174.) Sharpley was aggravated and told Raley "don't touch my clothes." (See Raley Depo at 177; Cadman Trial Testimony at 71, Bryant Trial Testimony at 445.) Raley then requested Sharpley's driver's license, whereby Sharpley responded "I will give you something and call it a driver's license." (See Raley Depo. at 177.) Raley placed his hand on his holstered pistol and followed Sharpley back to his vehicle. (See Raley Depo. 177-78, 180; Bryant Trial Testimony at 456, 467.) Sharpley's door was left open, and Sharpley leaned into his car to fumble with items in the console area. (See Raley Depo. at 182-83.) At this point, Raley was standing a few feet behind Sharpley. (See Raley Depo. at 181-82.)

Raley became concerned that Sharpley had grabbed a gun so Raley removed

8

his pistol from the holster on his belt, which was adjacent to a canister of mace.[11]
(See Raley Depo. at 185.)  Raley did not warn Sharpley that he was behind
Sharpley or that he removed his pistol.  (See Raley Trial Testimony at 552.)
Sharpley picked up something and began to turn back towards Raley.  (See Raley
Depo. at 185-86.)  At this point, Raley pointed his pistol, stepped back and fired,
striking Sharpley in the armpit area.  (See Raley Depo. at 186, 203.)

Raley then pointed his pistol at Wagar and ordered him to put his hands on
the dashboard.  (See Raley Depo. at 205.)  Raley then asked Wagar if Sharpley had
a gun.  (See Raley Depo at 205.)  Wagar answered that "there ain't no gun."  (See
Raley Depo. at 205.)  Raley then checked Sharpley and determined that he was
breathing and had a pulse.  (See Raley Depo. at 205.)  Raley called Johnson and
informed him that he was involved in a shooting, and approximately one minute
later, Raley again called Johnson to request emergency assistance.  (See Johnson
Depo. at 84-86.)  Raley and a nurse, who was coincidentally at the gas station,
performed cardiopulmonary resuscitation ("C.P.R.") on Sharpley.  (See Raley
Grand Jury Testimony at 19; Cunningham Trial Testimony at 212-13.)  A search
revealed that there was no gun on Sharpley's person, in his vehicle or on in the
possession of his passenger.  Instead, it was determined that Sharpley had grabbed

_____

[11] The following events elapsed in a very short period of time.

9

his driver's license which had fallen under his body. (See Raley Testimony at 554.) The bullet entered Sharpley's back at the right armpit and pierced his lung, liver and heart. See Raley v. State, Ms. 020983, at *4 (Ala. Crim. App. 2003). Sharpley died a few minutes later. (See id.)

These events prompted the State of Alabama to successfully prosecute Raley in the Circuit Court of Limestone County, Alabama. See State v. Raley, CC-01-118 (2002). On October 18, 2002, the jury in the state court criminal proceeding found Raley guilty of manslaughter.[12] The trial court charged the jury on the theory of self-defense as well as legal provocation. See Raley v. State, Ms. 020983, at *4 (Ala. Crim. App. 2003). Raley received a ten year suspended sentence and two years of probation. The Alabama Court of Criminal Appeals affirmed the conviction in Raley v. State, Ms. 020983 (Ala. Crim. App. 2003) (unpublished). The Alabama Supreme Court denied certiorari on December 13, 2003. See Ex parte Raley, Ms. 1030018 (Ala. 2003).

As mentioned above, on January 30, 2002, plaintiff initiated a civil lawsuit

---

[12] ALA. CODE § 13A-6-3 provides:

(a) A person commits the crime of manslaughter if:

...

(2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself.

10

in this court stemming from Sharpley's death under both state and federal law.

More specifically, plaintiff seeks relief for wrongful death under ALA. CODE § 6-

5-410 (Count I) and for alleged constitutional violations under 42 U.S.C. § 1983

(Count II).

## IV. Applicable Substantive Law and Analysis

The court first considers plaintiff's federal claims against Raley. In

determining whether summary judgment is appropriate, the threshold question is

whether plaintiff has established genuine fact issues regarding any constitutional

violation by defendants. In her complaint, plaintiff alleges a lengthy list of

constitutional violations, most of which are plainly inapposite to the facts of this

case. For example, plaintiff alleges violations "including but not limited to" the

Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. In the court's view, the

only federal claim which arguably exists in this case is based upon allegations of

excessive force pursuant to the Fourth Amendment as applied to state actors.[13]

---

[13] "[A]ll claims that law enforcement officers have used excessive force – deadly or not –
in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be
analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a
'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 394 (1989); Carr v.
Tatangelo, 338 F.3d 1259, 1267 n.15 (11th Cir. 2003). As noted, plaintiff's complaint alleges a
variety of constitutional violation, including a deprivation of substantive due process rights,
however, a substantive due process analysis is not appropriate if a plaintiff's claim is covered by
the Fourth Amendment. See County of Sacramento v. Lewis, 523 U.S. 833 (1998).
Accordingly, plaintiff does not have a viable substantive due process claim. Although plaintiff
appears to have abandoned the "deliberate indifference to medical care" claim, Compl. at ¶¶ 32-

11

### 1.    Plaintiff's 42 U.S.C. § 1983 Claim[14]

At the outset, the court notes that Raley has moved the court for summary

judgement based on the qualified immunity defense.  Qualified immunity is

designed to allow government officials to avoid the expense and disruption of trial

and should be decided early in the litigation, and for this reason, the first order of

business normally is qualified immunity.[15]  Since neither party disputes that Raley

was acting within his discretionary authority at all times relevant to this action, the

"threshold question" is to evaluate if an issue of material fact exists as to "whether

---

35, it is also inapplicable because this case involves a seizure, not pretrial detainee or convicted prisoner.  See Hardy v. Town of Hayneville, 50 F.Supp.2d 1176, 1186 (M.D. Ala. 1999).

[14]  Although a personal claim upon which no action has been filed survives against the personal representative of the deceased tortfeasor, ALA. CODE § 6-5-462 does not provide for the survival of a personal claim upon which no action has been filed prior to the death of the injured party.  The court therefore has some doubts that plaintiff's § 1983 cause of action survived Sharpley's death because by § 1983's text it is personal to the benefit of the person whose constitutional rights were violated and § 1988 points the court to Alabama law of survival.  See Robertson v. Wegman, 436 U.S. 584, 591 (1978) ("[d]espite the broad sweep of § 1983, we can find nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship.")  The Alabama legislature enacted the Alabama Wrongful Death Act providing punitive damagesas the sole remedy for conduct resulting in death.  Although the court analytically struggles with allowing survival for a § 1983 cause of action, policy concerns seem to suggest that plaintiff's cause of action under § 1983 survives.  See Gilmere v. City of Atlanta, Ga., 864 F.2d 734, 740 (11th Cir. 1989) (Gilmere III) (stating in dicta that it would be inappropriate to apply the Alabama wrongful death statute under § 1988 because it only provides for punitive damages).

[15]  Within two weeks following the commencement of this action on January 30, 2002, the court granted a stay to accommodate the related criminal proceedings.  The case was returned to active status January 14, 2004.

12

plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer,

536 U.S. 720 (2002); Saucier v. Katz, 533 U.S. 194, 201 (2001). More

specifically, the court will be evaluating Raley's use of deadly force in the context

of Fourth Amendment objective reasonableness. See Saucier, 533 U.S. at 202;

Graham, 490 U.S. at 397. If the evidence is such that a reasonable juror could find

that a Fourth Amendment violation occurred, the court must then look to whether

the right at stake was clearly established at the time of the shooting as to have put

Raley on notice that his actions were unconstitutional.

### 1.    Collateral Estoppel

Before addressing whether the evidence is sufficient to decide

reasonableness at the summary judgment stage, the court must address plaintiff's

contention that the doctrine of collateral estoppel, also known as issue preclusion,

prevents relitigation of the reasonableness of Raley's actions. The Supreme Court

has indicated that it is proper to give state court criminal judgments preclusive

effect in subsequent § 1983 cases. See Allen v. McCurry, 449 U.S. 90, 96 (1980)

(reasoning that the court should give "preclusive effect to state-court judgements

whenever the courts of the State from which the judgments emerged would do

so."); see also 28 U.S.C. § 1738 (full faith and credit statute). In evaluating

whether collateral estoppel has any application in this case, the court uses

13

Alabama issue preclusion law because the relevant inquiry is what effect an

Alabama court would give the judgment. See Wood v. Kesler, 323 F.3d 872, 879-

80 (11th Cir. 2003); Brown v. City of Hialeah, 30 F.3d 1433, 1437 (11th Cir.

1994); Vasquez v. Metro Dade County, 968 F.2d 1101, 1108 (11th Cir. 1992). For

the doctrine to apply in Alabama, four criteria must be met: (1) the issue is

identical to the issue litigated in the prior suit; (2) the issue was actually litigated

in the prior suit; (3) the resolution of the issue was necessary to the prior

judgment; and (4) the parties in the first suit must be identical to the parties in the

second suit. See McMillian v. Johnson, 878 F.Supp. 1473, 1520 (M.D. Ala. 1995)

rev'd in part on other grounds, 88 F.3d 1554 (11th Cir. 1996), cert. denied, 521

U.S. 1121, 117 S.Ct. 2514, 138 L.Ed.2d 1016 (1997); Jones v. Blanton, 644 So. 2d

882, 885-86 (Ala. 1994); Dairyland Ins. Co. v. Jackson, 566 So. 2d 723, 726 (Ala.

1990); Pierce v. Rummell, 535 So. 2d 594, 596-97 (Ala. 1988); Wheeler v. First

Alabama Bank of Birmingham, 364 So. 2d 1190, 1199 (Ala. 1978). While the

court sees potential issues in several of the collateral estoppel elements, the parties

in State v. Raley are not identical to the parties in this case.

The "same party" requirement reflects Alabama's adherence to the

traditional "mutality" rule limiting applicability to a party in the first suit, or

privies of that party. See Hurt v. Pullman Inc., 764 F.2d 1443, 1450-51 (11th Cir.

14

1985).[16] The mutuality requirement prevents a nonparty to the first action from

using the judgment of the first action as determinative of the same issue in the

second action. See Jones v. Blanton, 644 So.2d 882, 886 (Ala. 1994). The court

is mindful that Alabama's traditional approach can lead to harsh results, however,

Section 1983 does not "override state preclusion law." Migra v. Warren City

School Dist. Bd. of Educ., 465 U.S. 75, 85 (1984).[17]

While "Alabama courts have persisted in strict adherence to the mutuality

rule," Little, 432 So. 2d at 1274 (Jones, J., concurring specially), the "same

parties" requirement, which is the essence of the mutuality rule, is not strictly

enforced because "Alabama ... follows an expansive definition of privity." Wood,

323 F.3d 880 n.10; see also Hughes, 533 So. 2d 188, 191 (Ala. 1988) ("the term

'privity' has not been uniformly defined with respect to [collateral estoppel].").

Privity has been found where: "(1) the relationship [is with] one who is privy in

blood, estate, or law; (2) the mutual or successive relationship to the same rights

---

[16] It is well-settled that Alabama law requires mutuality of parties. See e.g., Stewart v. Brinley, 2004 WL 1859638, at *6 (Ala. 2004); Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So. 2d 507, 520 (Ala. 2002); Leon C. Baker , P.C. v. Merril Lynch, Pierce, Fenner & Smith, 821 So. 2d 158, 165 (Ala. 2001); Redmond v. Bankester, 757 So. 2d 1145, 1151 n.2 (Ala. 1999) ("in Alabama, that doctrine requires 'mutuality.'"); Equity Res. Mgmt., Inc. v. Vinson, 723 So. 2d 634 (Ala. 1998); Hughes v. Martin, 533 So. 2d 188 (Ala. 1988); Fisher v. Space of Pensacola, Inc., 461 So. 2d 790, 792 (Ala. 1984); Little v. Pizza Wagon, Inc., 432 So. 2d 1269, 1274 (Ala. 1983) (Jones, J., concurring specially); Pooley v. State, 470 So. 2d 1337 (Ala. Crim. App. 1985).

[17] "Alabama has consistently rejected [the] use of offensive preclusion." Comment, Issue Preclusion in Alabama, 32 ALA. L.REV. 500, 526 n.248 (1981).

15

of property; [or] (3) an identity of interest in the subject matter of litigation."
Baker, 821 So. 2d at 165 (internal citation and quotation marks omitted);
Dairyland, 566 So. 2d at 726 ("the test ... focuses on identity of interest.") (citation
omitted). "[T]he existence of privity has generally been resolved 'on an ad hoc
basis in which the circumstances determine whether a person should be bound by
or entitled to the benefits of a judgment.'" Baker, 821 So. 2d at 165. (quoting
Comment, supra note 17, at 520.)

Plaintiff was not a party to the state court manslaughter prosecution. See
State v. Raley, CC-01-1018 (Limestone Circuit Court). Therefore, the "same
parties" requirement hinges on whether plaintiff is in privity with the State of
Alabama.[18]  To answer this question, Alabama law requires the court to use the
identity-of-interest test. See Dairyland, 566 So. 2d at 726. As a starting point, the
court recognizes that plaintiff, as the victim's surviving spouse, had a strong
personal interest in Raley's state criminal prosecution. However, plaintiff did not
control any aspect of the state's prosecution. She had no influence on whether the
case went forward or how it was conducted. If plaintiff had any control over the

---

[18] The court notes that under Georgia and Florida law, which have also followed the old
mutuality rule, privity does not exist between a police officer sued under § 1983 and the state,
who prosecuted the plaintiff in a prior criminal case. See Quinn v. Monroe County, 330 F.3d
1320, 1329-30 (11th Cir. 2003) (Florida); Farred v. Hicks, 915 1530, 1533-34 (11th Cir. 1990)
(Georgia).

case, surely she would have sought a conviction for murder instead of

manslaughter. The State of Alabama represents the interests of the people of

Alabama, and as such, plaintiff, at least in a strict legal sense, did not have an

interest in the prosecution distinguishable from any other Alabama citizen.

Likewise, plaintiff's argument is weakened by the fact that assuming Raley

had been acquitted, whether it was because the jury believed he acted in self-

defense or because the prosecution failed to prove all the elements of

manslaughter beyond a reasonable doubt, plaintiff would not have been estopped

from bringing this lawsuit and litigating the issues on a clean slate. "It is settled

that the party claiming the benefit of the prior judgment as an estoppel against the

opposing party must be one who would have been prejudiced by a contrary

decision in the prior case." Dairyland, 566 So. 2d at 727 (citing Interstate Elec.

Co. v. Fidelity & Deposit Co. of Maryland, 153 So. 427 (1934)); AAA Equip. &

Rental, Inc. v. Bailey, 384 So. 2d 107 , 110 (Ala. 1980). The standard of proof in

the criminal case required a finding of guilt beyond a reasonable doubt. The

standard of proof in this civil case is lower as it requires a finding of liability by a

preponderance of the evidence. The differences in the standards allow an issue

litigated in the first case to be litigated again in a subsequent case because the

17

standard of proof is higher in the first case than the second.[19] Plaintiff would not

be bound by an adverse judgment in the state criminal proceeding because such a

judgment would only mean that there was a reasonable doubt that Raley

committed a crime. Under this logic, plaintiff is not a privy of the state.[20]

---

[19] "For instance, if A filed suit against B seeking recovery of money which B allegedly took from A during a robbery, B's acquittal in a criminal proceeding for robbery would not constitute a bar to A's suit." City of Gadsden v. Head, 429 So. 2d 1005, 1007 (Ala. 1983) (citation omitted).

[20] The Eleventh Circuit has "tread into the bramble bush of collateral estoppel," Quinn v. Monroe County, 330 F.3d 1320 (11th Cir. 2003), with mixed results. In Farred v. Hicks, the Eleventh Circuit refused to apply collateral estoppel when an acquitted individual sued police officers under § 1983 for an allegedly unlawful search performed during his criminal investigation. 915 F.2d 1530 (11th Cir. 1990). The police officer defendants in the civil case argued that collateral estoppel barred the civil claims because the criminal court ruled that the search did not violate the Fourth Amendment. Farred, 915 F.2d at 1533. The Eleventh Circuit held that since Georgia used the "old mutuality rule," and the police officers were not parties to the state prosecution, they could not use collateral estoppel. Id. at 1533-34.

In another similar case, a Florida state court denied certiorari, effectively affirming the decision to terminate a county worker's employment. Quinn, 330 F.3d at 1328. The worker then sued under § 1983 alleging that her termination violated the First Amendment and the defendant county administrator argued that collateral estoppel prevented relitigation that her termination was supported by "just cause." Id. at 1329. The court held that although Florida courts have "relaxed the mutuality rule," "we must follow Florida's general rule requiring mutuality of parties." Id. at 1330, 1333. Farred and Quinn appear to stand for the proposition that under the mutuality requirement, issue preclusion cannot benefit a stranger to the first suit even against a party who had a full opportunity litigate the issue.

On the other hand, in Parker v. Williams, a jailer was convicted of raping a woman released on bond. 862 F.2d 1471, 1474 (11th Cir. 1989), overruled on other grounds by, Turquitt v. Jefferson County, Ala., 137 F.3d 1285 (11th Cir.1998). After the conviction, the victim instituted a § 1983 suit against the jailer, his supervisor and the county. Id. The Eleventh Circuit held that under Alabama law, collateral estoppel could not be used against the supervisor or the county because they were not parties to the criminal prosecution. Id. However, in a footnote regarding the jailer, the court stated "[the jailer] had his opportunity to litigate the fact of the rape in his state criminal proceeding. Therefore, collateral estoppel was available to preclude him from relitigating the issue in this case." Id. at 1475 n.2. Since the jailer was not a party to the appeal, it is non-binding dicta because the footnote could have been omitted without impairing the holding,. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1315 (11th Cir.1998) ("[D]icta

18

The court is not alone in arriving at this conclusion. On several occasions, the Alabama Supreme Court has explained the extent to which a criminal judgment may be used in subsequent civil cases. The general rule is that "[a] prior criminal conviction can be used in a subsequent civil action arising out of the same transaction or occurrence, as substantive, although not conclusive, evidence of the acts underlying the crime committed." Kitchens v. Maye, 623 So. 2d 1082, 1087 (Ala. 1993); Fideltiy-Phenix Fire Ins Co. v. Murphy, 146 So. 387, 392 (Ala. 1933) (holding that prior convictions are not conclusive in civil cases except when the state is a party to the civil case). Accord Weir v. U.S., 716 F.Supp. 574, 579 (N.D. Ala. 1989) (same). "A judgment in a civil case is not conclusive as [an estoppel] in a criminal case, or vice versa, there being no mutuality of parties and a different degree of proof, respectively, being required." Helms v. State, 45 So. 2d 170, 171 (Ala. Ct. App. 1950) (quoting Justice Simpson's language in Roden &

in our judicial opinions is not binding on anyone for any purpose."). It should be noted that plaintiff relies on Parker v. Williams, 855 F.2d 763 (11th Cir. 1988), which was withdrawn and replaced with 862 F.2d 1471.

Moreover, in Wood v. Kesler, an individual was arrested when he refused to sign a traffic citation issued to him by an Alabama state trooper. At the criminal trial, the individual was found guilty of speeding but not guilty of reckless driving. 323 F.3d 872, 875-76 (11th Cir. 2003). The criminal defendant then brought a § 1983 suit against the trooper. Id. at 876-77. The court precluded argument that the driver was speeding reasoning that "[a]lthough State Trooper Kesler was not a party in the prior case, Kesler acted for the State in charging Wood with speeding in the prior case and shares an identity of interest with the State in the subject matter of the litigation. Thus, any mutuality requirement is satisfied." Id. at 880 n.10. This relationship is much closer than that of plaintiff and the state since a state trooper is an agent of the State of Alabama and tangentially involved in the prosecutorial function.

Son v. State, 3 So. 2d 420, 421 (Ala. Ct. App. 1941)). Thus, Alabama law would recognize that Raley's conviction is probative evidence that Raley shot Sharpley but would give the underlying findings no preclusive effect.[21]

As addressed to her Section 1983 claim stated in Count II and her Alabama wrongful death claim stated in Count I, plaintiff's motion for summary judgment has no arguable merit unaided by her argument that collateral estoppel should apply.[22]  Having lost that argument, there being no dispute as to any material fact, the September 14, 2004 motion of plaintiff for summary judgment in her favor on the issue of liability is due to be denied.

### 2.    Excessive Force

The court now proceeds to the merits of Raley's qualified immunity argument without regard to the Limestone County Circuit Court judgment since

---

[21] Even if the court had found that plaintiff fulfilled the "same parties or privies" requirement, after assessing the numerous issues lurking within the collateral estoppel test, and seeking the clarification of counsel in chambers, it is apparent that there are potential problems with the other elements of collateral estoppel.  The court recognizes that collateral estoppel is an equitable doctrine aimed at judicial economy, fairness to litigants and preventing inconsistent judgments. Allen, 449 U.S. at 90; Parker v. Jefferson County, 796 So. 2d 101, 1075 (Ala. 2000). Each of these goals is better served by allowing this case to go forward on its own merits with respect to the objective reasonableness of Raley's conduct. Were the court to concluded otherwise and permit preclusive effect of each of the essential elements of manslaughter under ALA. CODE § 13A-6-3, would not plaintiff be precluded from arguing that the actions of Raley were not "due to a sudden heat of passion caused by provocation recognized by law and before a reasonable time for the passion to cool and for reason to reassert itself?"

[22] Her other arguments lack sufficient merit to warrant further comment.

the unconstitutional nature of Raley's use of force is not precluded by collateral

estoppel. As mentioned above, the court must decide whether a reasonable jury

could conclude from the evidence that Raley's use of deadly force under the

circumstances violated the Fourth Amendment, and if a reasonable juror could

come to this conclusion and Sharpley's rights were clearly established, summary

judgment based on qualified immunity is improper.

The first step in the Fourth Amendment analysis is to determine whether the

plaintiff was subject to the "intentional acquisition of physical control" by a

government actor. See Brower v. County of Inyo, 489 U.S. 596 (1989). This

inquiry is beyond question in the present case. See Garner, 471 U.S. at 7 ("there

can be no question that apprehension by the use of deadly force is a seizure subject

to the reasonableness requirement of the Fourth Amendment."). The second step

of such an analysis, in fact the touchstone of any Fourth Amendment excessive

force examination, is application of the "objective reasonableness" standard. See

Graham v. Connor, 490 U.S. 386, 388 (1989); Pace v. Capobianco, 283 F.3d 1275,

1281 (11th Cir. 2002). This test requires balancing the nature and quality of the

intrusion against the governmental interests supporting the intrusion, Garner, 471

U.S. at 8, and asking "whether the officer's actions are objectively reasonable in

light of the facts confronting the officer, regardless of the officer's underlying

21

intent or motivation." Montoute v. Carr, 114 F.3d 181, 183 (11th Cir.1997) (citing

Graham, 490 U.S. at 397). The court must additionally allow "for the fact that

police officers are often forced to make split-second judgments - in circumstances

that are tense, uncertain, and rapidly evolving - about the amount of force that is

necessary in a particular situation." Pace, 283 F.3d at 1281 (quoting Graham, 490

U.S. at 397). Because "[t]he test of reasonableness under the Fourth Amendment

is not capable of precise definition or mechanical application," Bell v. Wolfish,

441 U.S. 520, 559 (1979), "its proper application requires careful attention to the

facts and circumstances of each particular case including the severity of the crime

at issue, whether the suspect poses an immediate threat to the safety of the officers

or others, and whether he is actively resisting arrest or attempting to evade arrest

by flight." Graham v. Connor, 490 U.S. 386, 396 (1989) (citing Garner, 471 U.S.

at 8-9). The "'reasonableness' of a particular use of force must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision

of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22

(1968)).

Raley did not violate the Fourth Amendment if he had "probable cause to

believe that [Sharpley] pose[d] a threat of serious physical harm, either to [Raley]

or to others." Garner, 471 U.S. at 11. Raley has a strong argument for qualified

22

immunity based on Eleventh Circuit precedent. For example, in Carr v. Tatangelo,

the Eleventh Circuit refused to "fashion an inflexible rule that, in order to avoid

civil liability, an officer must always warn his suspect before firing – particularly

where, as here, such a warning might easily have cost the officer his life." 338

F.3d 1259, 1269 n.19 (11th Cir. 2003) (citing McLenagan v. Karnes, 27 F.3d

1002, 1006-07 (4th Cir. 1994)). The court also stated that "[i]t is true that [the

officer] did not see a gun in [the suspect's] hands, but it is also true that he could

not confirm that [the suspect] was unarmed." Carr, 338 F.3d at 1269. In revisiting

prior holdings the court also indicated that:

> Reconsideration will nearly always reveal that something different could
> have been done if the officer knew the future before it occurred. This
> is what we mean when we say we refuse to second-guess the officer. In
> determining whether the officers in this case are entitled to qualified
> immunity, we analyze the precise circumstances immediately preceding
> [the suspect's] being shot and not the ... events following the shooting.

Id. at 1270. While Carr dispels several of plaintiff's main arguments, the court's

qualified immunity analysis is driven by the unique facts of the case at bar. In

answering the pertinent question through the lens of a reasonable officer and the

summary judgment standard, the court cannot conclude that a reasonable jury

could find that Raley had probable cause to believe Sharpley posed a threat of

serious physical harm to him.

23

But in the Eleventh Circuit qualified immunity is also available under the arguable probable cause standard, which provides qualified immunity when "an officer ... may not have been constitutionally permitted to use deadly force." Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003). In other words, Raley is entitled to qualified immunity if the evidence objectively viewed, is sufficient to allow a reasonable juror to find that Raley "reasonably could have believed that probable cause existed to use deadly force." Id. (citing Montoute, 114 F.3d at 184). In resolving all justifiable inferences from the facts in plaintiff's favor, the court is satisfied that a reasonable jury could conclude that an objectively reasonable officer in Raley's position would not have been reasonable in believing that he was entitled to shoot Sharpley based on the totality of the circumstances presented that afternoon.[23] For the foregoing reasons, the October 13, 2004 motion of Raley for summary judgment in his favor in regard to plaintiff's Section 1983 claim stated in Count II is due to be denied.

The court is aware of the paucity of cases in the Eleventh Circuit which deny a peace officer qualified immunity, but the present matter seems to fit into the small class of cases where summary judgment based on qualified immunity is

---

[23] If a jury were to so conclude, the court would have little difficulty finding that such a Fourth Amendment violation was clearly established on July 6, 2001.

improper. While the court will be denying Raley qualified immunity on plaintiff's

Section 1983 claim, the Eleventh Circuit has instructed that in such a case Raley is

not prevented from raising qualified immunity at trial. See Vaughan, 343 F.3d at

1333; Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 n.3 (11th Cir.

2000); Cottrell v. Caldwell, 85 F.3d 1480, 1487 (11th Cir. 1996). In fact, he is

encouraged to have the jury resolve any factual disputes relevant to qualified

immunity through special interrogatories. Id. (relying on Eleventh Circuit case

law).

## 2. *Plaintiff's Wrongful Death Claim*

Count I of plaintiff's complaint alleges a state wrongful death claim against

Raley under ALA. CODE § 6-5-410, and Raley has also moved for summary

judgment on that claim. Raley argues that because he is a peace officer, he is

immune from plaintiff's state law claims on the basis of statutory discretionary

function immunity. Alabama Code. § 6-5-338(a) states in pertinent part:

(a) Every peace officer, except constables, who is employed or
appointed pursuant to the Constitution or statutes of this state, whether
appointed or employed as such peace officer by the state or a county or
municipality thereof, or by an agency or institution, corporate or
otherwise, created pursuant to the Constitution or laws of this state and
authorized by the Constitution or laws to appoint or employ police
officers or other peace officers, and whose duties prescribed by law, or
by the lawful terms of their employment or appointment, include the
enforcement of, or the investigation and reporting of violations of, the

25

criminal laws of this state, and who is empowered by the laws of this
state to execute warrants, to arrest and to take into custody persons who
violate, or who are lawfully charged by warrant, indictment, or other
lawful process, with violations of, the criminal laws of this state, shall
at all times be deemed to be officers of this state, and as such shall have
immunity from tort liability arising out of his or her conduct in
performance of any discretionary function within the line and scope of
his or her law enforcement duties.

If Raley was performing a discretionary function he will be immune from state

claims "unless the officer's conduct is so egregious as to amount to willful or

malicious conduct or conduct engaged in bad faith." Couch v. City of Sheffield,

708 So. 2d 144, 153 (Ala. 1998) (internal citation omitted); Thurmond v. City of

Huntsville, 2004 WL 596167, at *5 (Ala. Civ. App. 2004).

Discretionary acts are "those acts as to which there is no hard and fast rule

as to the course of conduct that one must or must not take and those acts requiring

exercise in judgment and choice and involving what is just and proper under the

circumstances." Wright v. Wynn, 682 So. 2d 1, 2 (Ala. 1996). The parties do not

dispute that Raley acting within his discretionary authority. Therefore, the burden

shifts to the plaintiff to demonstrate that Raley acted maliciously, willfully, or in

bad faith. See Sheth v. Webster, 145 F.3d 1231, 1239 (11th Cir. 1998); Couch,

708 So. 2d at 153. Plaintiff need only present evidence creating an issue of

material fact regarding one of the three to survive summary judgment.

The Alabama Supreme Court has defined malice, willfulness and bad faith. Malice is "the intentional doing of a wrongful act without just cause or excuse, either with an intent to injure the other party or under such circumstances that the law will imply an evil intent." Empiregas, Inc. v. Feely, 524 So. 2d 626, 628 (Ala. 1988). "Wilfulness is the conscious doing of some act or omission of some duty, under knowledge of existing conditions accompanied with a design or purpose to inflict injury." Reed v. Brunson, 527 So. 2d 102, 119 (Ala. 1988). Bad faith "contemplates a state of mind affirmatively operating with furtive design or ill will." In re Sheffield, 465 So. 2d 350, 359 (Ala. 1984).

No evidence indicates that Raley was acting "with furtive design or ill will." On the other hand, plaintiff argues that because Raley intentionally shot Sharpley, he exhibited malicious and/or willful conduct. If the evidence is taken in the light most favorable to plaintiff, a reasonable jury could find that Raley acted willfully or with malice. See Martin v. Anderson, 107 F.Supp.2d 1342, 1352 (M.D. Ala. 1999) (quoting Wright, 682 So. 2d at 2, "[b]ecause the record indicates that a fact question was presented as to whether [the officer] used excessive and illegal force in arresting [the suspect], we cannot agree that the doctrine of discretionary function immunity precludes [the suspect's] assault and battery claim.") For this reason, Raley is not entitled to summary judgment based on the Alabama statutory

27

discretionary function immunity.  As was the case with federal qualified immunity, simply because the evidence presented does not permit entry of summary judgment, Raley may still be entitled to immunity based on the jury's findings at trial.

## V. CONCLUSION

The court is satisfied and concludes, after resolving all reasonable doubts about the facts in favor of the respective non-movant, and after resolving all justifiable inferences in favor of that non-movant, that summary judgment is not appropriate for either party.  Given the circumstances of this case, these inquiries are best resolved by a jury at trial.  For these reasons, plaintiff's motion for summary judgment [doc. # 54-1] and Raley's motion for summary judgment [doc. # 69-1] are **DENIED**.

DONE this  1st  day of February 2005.


_____
SENIOR UNITED STATES DISTRICT JUDGE

28